Heard April Term, 1878.

CASE No. 615.

### FREDERICK E. FRASER v. MARY F. DAVIE, CHURCHILL B. JONES AND HIS WIFE AND CHILDREN.

1. In cases where a dispute arises as to whether a deed of trust has ever become operative, it is proper for the trustee named in such deed to seek the interposition of a court of equity to define his rights and duties, as between the grantor in trust and the beneficiaries under the deed. And a complaint for such purpose is not a bill of interpleader.
2. Such trustee is bound to the exercise of good faith towards his grantor.
3. When one for value agrees to convey to another and the latter prepares a deed of trust for signature, professing to be upon the consideration of natural love and affection, equity will look beyond the terms of the deed to the true consideration, and finding that, will so declare it, and act upon it.
4. A finding of fact by a Circuit judge is not binding upon this court, when a contrary conclusion rests on clear and indisputable grounds.
5. The word "understood" as applied by a witness to his own apprehension of an agreement to which he was himself a party, is direct proof in itself of what the agreement was.
6. The manual delivery of a deed will not be regarded as a full and complete delivery when it is mutually understood at the time, between grantor and grantee, that such deed is not to become operative until some future event. *Arthur* v. *Anderson,* 9 *S. C.* 234.

Before Mackey, J., at Chester, September Term, 1876.

The allegations of the complaint and answers are sufficiently set forth in the opinion of the court. The deed is an indenture, and recites as follows:

"*Witnesseth:* That the said Mary F. Davie, party of the first part, for and in consideration of the natural love and affection that she bears to her nephew, Churchill B. Jones, and Sarah, his wife, and their children," naming them, "and for and in consideration of the sum of five dollars to her in hand paid by the said Frederick E. Fraser, party of the second part aforesaid, the receipt whereof is hereby acknowledged, hath this day bargained, sold, &c.,  *  *  *  to have and to hold the said bargained premises unto the said Frederick E. Fraser, his heirs, executors and administrators, upon the following trusts and conditions: *In trust* for the use of the said Churchill B. Jones and Sarah, his wife," &c.  The deed concludes in due form and is signed by Mary F. Davie, and Frederick E. Fraser, whose seals are annexed to their respective signatures, in presence of two subscribing witnesses, one of whom makes probate in usual form of the signing, sealing and delivery of the deed.

*Frederick E. Fraser* testified that he was a nephew of Mrs. Mary F. Davie, and had been her general business agent since 1850; Mary F. Davie held a judgment against C. B. Jones for $4285.74, which, with interest, amounted in January, 1869, to about $6300; said Jones proposed in 1868 to compromise said debt by paying $500 in cash, and $1000 in one, two and three years, with interest at eighteen per centum per annum, to be secured by a mortgage of two tracts of land which he had purchased a year before, and which were included in the trust deed to me; Jones had deeds executed by the sheriff of Chester county to Mrs. Davie for these two tracts, paid her $500 in cash, and Mrs. Davie reconveyed the two tracts to me in trust for said Jones and his wife and children; according to my understanding this deed was not to take effect until the balance of $1000 and interest was paid; Jones has paid Mrs. D. nothing but the $500; in November, 1873, she purchased through her attorney, Maj. S. P. Hamilton, under an execution in favor of C. B. Jones, a tract of land, which, after paying costs, left a credit to Jones of $701.40, which was applied to Mrs. D.'s judgment against Jones; Jones had a credit entered on her judgment against him for $2475, purchase money of two tracts of land covered by deed of trust, leaving about $4878 still due Mrs. Davie; as

soon as trust deed was executed it was sent to either Jones or Maj. Hamilton; the existence of the deed had passed entirely out of my mind until reminded of it by Maj. Hamilton, who in 1874 found it among his papers, and handed it to me; the deed was not recorded because, as I understood, it was not to be recorded until all the conditions of the compromise had been complied with; Jones called upon me in 1874 to have the deed recorded; Mrs. D. objected, because Jones had not carried out the terms of his compromise; Jones insisted, and by the advice of my counsel I commenced these proceedings.

*Cross-examination.*—Do not remember whether sheriff's deed was in possession of or known to Mrs. D. at time of execution of trust deed; did not direct Hamilton in the matter, as he had charge of business as legal adviser of Mrs. D.; trust deed is in Maj. H.'s handwriting, and I paid him $25 for Mrs. D. for professional services in arranging compromise with Mrs. D.; Jones wrote to me early in 1868 proposing compromise, as stated in my direct examination, which. I submitted to Mrs. D., and by her directions placed the matter in Maj. H.'s hands; in February, 1868, I wrote to Jones saying Mrs. D. would accept the offer, but would not assign judgment until the whole amount was paid.

*Mrs. Mary F. Davie* testified as follows: I am seventy-four years old; am aunt of plaintiff, and I married uncle of C. B. Jones; am no relation to any of the other parties; I executed a deed in 1869 to F. E. Fraser in trust for C. B. Jones and his family; Jones then owed me about $6000 by judgment; he desired to compromise it on the following terms: $1500—$500 cash and $1000 in one and two years; I agreed to the compromise, and he paid the first $500, but has never paid anything since; this was the consideration of said deed; he now owes me about $5000; I never knew that Jones had bid in land for me and credited the bid on my judgment; I never authorized him to do so; Jones never informed me that he had done so; plaintiff has been my business agent since 1850.

*Cross-examination.*—I am aunt of Henry D. Fraser and Jane M. Fraser, the witnesses to the trust deed; Mr. Hamilton was my lawyer in Chester, but cannot remember what lawyer repre-

sented me in the judgment in my favor against Jones, as F. E. Fraser attended to all these matters for me; I think C. B. Jones was present when trust deed was executed, but am not certain; I know nothing about two deeds from Sheriff Walker—they were never in my possession.

*S. P. Hamilton, Esq.,* testified: Was counsel of Mrs. Davie directly after the war; was employed to manage her business here, and particularly her judgment against Jones; was from time to time Jones' attorney; not much concerned with attempted settlement, but Mr. J. made me acquainted with this matter; J. held judgment against Beckham, under which two tracts of land were sold and purchased by J.; in 1868 the two deeds were put on record; they were given to me by J.; it was agreed between J. and myself that I should give him credit for purchase price of land, $2475; terms of agreement, J. to pay $500 cash and $1000 on some credit; I drew the deed; must have been before September 26th, 1868; balance of $1000 to be paid in one and two years—judgment meantime to remain open; drew deed under instructions of J.; Fraser gave me no instructions; I sent deed to Mr. F., January 7th, 1869, by letter, by direction of, I think, Mr. J.; Mr. J. returned me the deed with two others; he directed me to have the other two deeds recorded and not to record trust deed; it lay in my office until this controversy commenced, when J. came to me and said I had it; I had forgotten, but found it; corresponded with Mr. F. in reference to Mrs. D.'s business; informed F. of the terms of the deed; in this I was acting as Mrs. D.'s attorney; did not leave the deed with the clerk; put credit on execution as attorney of Mrs. D.; think J. asked me to give him the deed—told him I thought it belonged to F.; saw F. afterwards in Charleston; said he had forgotten deed—asked me to send it to him to let him look at it; did so; he did not return it.

*J. M. Brawley,* county auditor, testified that since execution of the deeds by the sheriff to Mrs. Davie, J. has returned the two tracts conveyed by those deeds in Mrs. D.'s name, and has paid the taxes upon them as such.

*C. B. Jones'* answer, by agreement, was received as evidence; its statements are as follows: That the defendant, C. B. Jones,

having bought at sheriff's sale the lands embraced in the trust deed under an execution in his own favor, at Chester C. H., entered into an arrangement with Mary F. Davie, whereby C. B. J. paid over to said M. F. D. $500 in cash, and assigned the bids for the said land to said M. F. D., so that she, by the agreement and arrangement referred to, could make said trust deed to said plantiff for the uses and purposes therein mentioned, which arrangement was agreed to and carried out by the said M. F. D.; that everything was done that was required between the parties to make the deed perfect, and the deed was understood to be complete and perfect at the time of its execution, and each and every allegation of the complaint to the contrary is untrue; that C. B. J. knows that the said deed was sent to the clerk's office for Chester county to be there recorded, and if it was not done, it was not on account of anything to be done by him under the agreement referred to between him and M. F. D., but must be owing to negligence of plaintiff or M. F. D., whose duty it was to have the deed recorded; and it was intended at the time by all parties to be placed on record, and was intended to be recognized as such by M. F. D. and by plaintiff, who was trustee, and by all the persons interested in the same.

In a letter of Churchill B. Jones to F. E. Fraser, put in evidence by Mrs. Davie, Jones makes the following statement: In the early part of 1868 I proposed to Aunt Davie a compromise, which she consented to—it was as follows: I would pay her $500 cash and $1000 on time—one, two and three years—interest at eighteen per cent.; after this $1500 was paid the balance of the claim she held against me she was to settle on my family; my business did not call me to Charleston until the early part of 1869; before going to Charleston I had the sheriff to execute titles to Aunt Davie for the two tracts of land, which I took with me; on my way down I requested Hamilton to draw up a trust deed for the same; he sent it by express to F. E. Fraser; it arrived too late to be executed before I left Charleston; Aunt Davie knew nothing of trust deed lands at the time of the proposition in 1868; while I was in Charleston I showed the trust deeds from the sheriff to Aunt Davie, when the following second and last arrangement was entered into; I was to pay Aunt Davie

$500 cash; upon doing so, Aunt D. was to sign the trust deed for the same, and F. E. F. was to forward it, with the two sheriff's deeds, to me to be recorded; and on my paying Aunt D. $1000 more, the same in one, two and three years, with eighteen per cent. interest, Aunt D. would then settle what balance remained on her claim against me on my family in the same way as the trust deed lands; I paid Aunt D. the $500 and returned home; F. E. F. forwarded to me the two deeds from the sheriff, also the trust deed, signed, witnessed and proven; the first time I went to Chester I took the three deeds with me to have them recorded; I left them with Hamilton, requesting him to hand them to the clerk to be recorded, which he promised to do; the first time I was at Chester after that, H. informed me that the sheriff's deeds were recorded but the trust deed was not, and gave the reason why it was not; I then requested him to keep the trust deed until I called for it.

In a letter from C. B. Jones to S. P. Hamilton, also put in evidence by Mrs. Davie, Jones says: You informed me * * * that the two sheriff's deeds were recorded, but the trust deed had been refused record for the lack of revenue stamps; that the law required it should be stamped before it could be recorded, and that I would have to have it done.

The Circuit judge, after an elaborate review of the points at issue, decreed as follows: After due consideration of the law, the facts in the premises and of all the equities of the parties complaining and interpleading herein, it is hereby ordered, adjudged and decreed that the deed of trust described in the complaint herein, was duly executed by the defendant, Mary F. Davie, the settlor thereof, and by Frederick E. Fraser, the grantee named therein, and that the said deed was absolutely and unconditionally delivered by the said settlor to the said grantee, and did vest in the said grantee the legal estate in the lands described in the said deed, and did convey to Churchill B. Jones and Sarah, his wife, and the other *cestuis que trust* therein designated, the equitable title and beneficial interest in the said lands.

It is further ordered, adjudged and decreed that the said deed

of trust be forthwith recorded in the office of the register of mesne conveyances in and for the county of Chester.

It is further ordered, adjudged and decreed that the plaintiff, F. E. Fraser, do pay his own costs in this action; and that the defendant, Mary E. Davie, do pay the costs and disbursements of the defendants, C. B. Jones and Sarah, his wife, and their co-defendants, the *cestuis que trust* interpleading herein.

Mary F. Davie and Frederick E. Fraser appealed from this decree to the Supreme Court.

*Mr. Edward McCrady, Jr.*, for Mrs. Davie.

The deed purports to be a voluntary conveyance—one in consideration of natural love and affection. From the evidence, it does not appear that Mrs. Davie bears such a relation to the beneficiaries under the deed as would support such a consideration. 2 *Black.* 297. But if a voluntary deed, equity will not aid Jones and his family, for there is no equity to enforce an imperfect gift. 6 *Ves.* 662; 18 *Ves.* 140; 1 *Fonb. Eq.* 349. See same doctrine recognized in 2 *Desaus.* 191; 3 *Desaus.* 1; and in 1 *Johns. Ch.* 336. Voluntary agreement will not be completed or assisted by a court of equity in cases of mere gift; if anything be wanting to complete the title of the donee, a court of equity will not assist him in obtaining it. 4 *De G., F. & J.* 263, 519; 2 *Molloy* 257.

But this was not a voluntary deed; there was a consideration different from that expressed in its recital, which may be proven. 7 *Bro. P. C.* 74; 3 *T. R.* 474; 3 *Ad. & El.* 649; *May's note to § 26, 13th ed. of Greenl. Ev.;* 2 *Taunt.* 141; 5 *Barn. & Ald.* 606; 18 *Ves.* 483; 1 *Atk.* 352; 2 *Hill* 404; 1 *McC.* 514; *Riley Eq.* 131; *Best on Ev.* (Am. ed., 1875,) 398, *note;* *Sug. on V. & P.* 153, *note;* *Whart. on Ev.*, § 1048; 12 *Eng. R.* 236, *note;* 16 *Wend.* 460; 5 *Barb.* 455.

Mrs. Davie is not bound by compromise which she, ten years ago, generously agreed to, but of which Jones did not avail himself, and has put her to all this litigation. 2 *Strob.* 20; 3 *Strob.* 25.

Mrs. Jones and her children cannot take free from the agree-

ment of Jones and unaffected by his conduct in the matter. 4 *Mer.* 222; *L. R.*, 8 *Ch. App.* 383; 5 *Eng. R.* 607.

As to the delivery of the deed. It may be shown that the deed was, in fact, not executed, or that its execution was only conditional. *Whart. on Ev.*, §§ 927, 930, 1054; 24 *W. R.* 159, 33 *L. T.* 672; 4 *Barn. & Ald.* 440; *2 Barn. & Cr.* 82; 5 *Barn. & Cr.* 671; 11 *M. & W.* 128.

We are met by the technical rule that a deed delivered to a party in interest cannot be considered as *escrow*. But the deed was in Hamilton's hands, Mrs. Davis' agent, and the testimony shows was put there by agreement of all parties.

If sealed instruments are sacred, is it not upon the principle of estoppel—a principle not favored at law? 5 *Barn. & Ald.* 606. But deed was drawn under Jones' directions, and if she is thereby estopped, he is still more estopped by his sworn returns to the auditor that the land belonged to Mrs. Davie.

*Mr. W. G. De Saussure,* for F. E. Fraser.

Fraser is not liable for the costs of the action. *Perry on Trusts*, §§ 433, 892; 5 *De G., M. & G.* 258; 1 *McC.* 251. An appeal relating to costs alone will not be sustained. But where the decree is found to be erroneous on other points, the court is to adjudge the costs upon the principles of the decree as reformed. 2 *Strob. Eq.* 166.

*Mr. G. J. Patterson,* for respondents.

The question is, is the deed of January 9th, 1869, a perfect and complete deed of conveyance?

If executed upon condition that it was "not to be put on record until a complete settlement," &c., it would still be a valid deed. 3 *McC.* 205; 2 *Black.* 307; 4 *Kent* 454.

The delivery to the grantee makes it absolute. 8 *Rich. L.* 325; 4 *Strob.* 46; 10 *Smed. & M.* 9; *Smith on Cont.* 10; 2 *Stark. Ev.* 477; 4 *Com. Dig., tit. "Fait,"* A, 5; 13 *Vin. Ab.*, *"Fait,"* M, 8; 6 *Mod.* 218.

The *prima facies* is surely in favor of the deed, and it can be avoided only by plenary proof, and the attesting witnesses must be called. 1 *Phil. Ev.* 425; 4 *East* 53. In his sworn complaint,

plaintiff says the deed was executed and delivered; by this he is bound. 1 *Greenl. Ev.*, §§ 27, 205, 551; 3 *Greenl. Ev.*, § 275. Mrs. Davie admits this under oath; she, too, is bound. *Ibid.* A promise by Jones to pay $1000, unperformed, cannot affect the rights of the *cestuis que trust.* 4 *Kent* 130. There can be no vendor's lien. 2 *S. C.* 56. If *habendum* in a deed repugnant to the premises, which are complete, is void, much more should verbal condition annexed to delivery be void, when repugnant to both premises and *habendum.* *Harp.* 492; 4 *McC.* 12, 198.

August 13th, 1878. The opinion of the court was delivered by

WILLARD, C. J. This is a complaint in the nature of a bill by a trustee, to have the nature and extent of his interests and duties in regard to the trust property defined and settled, as against the grantor in trust and the *cestuis que trust.* It has been erroneously supposed by the Circuit decree that the case is one of interpleader. When one admits himself to be liable to perform some act, to the performance of which others make conflicting claims, he may interplead them to ascertain to whom the duty is due. But that is not this case, for the conflict does not depend on the fact that each party claims the same duty from the trustee; on the contrary, the demands of the grantor and the *cestuis que trust,* are of separate natures, claiming the performance of acts of a different character on the part of the trustee. From the character of the demand it will appear to bear a closer resemblance to a bill for the specific performance of a parol contract for the sale of land in part carried out, than to a bill of interpleader.

The complaint alleges that the defendant, C. B. Jones, being indebted by judgment to the defendant, Mrs. Davie, in an amount exceeding $6000, they agreed to compromise such indebtedness on the following terms: Jones was to pay to Mrs. Davie $500, and to convey to her the land described in the complaint, by way of mortgage, to secure the payment of $1000 more, in installments, with interest at an agreed rate; Mrs. Davie to assign the judgment for the protection of Jones. It is alleged, however, that Jones, without consultation with Mrs. Davie, changed the plan of arrangement in the following manner:

Instead of having title to the land, his claim upon it was under the lien of a judgment held by him against a third person, who was the owner thereof, and in addition thereto, under a bid made by him at sheriff's sale on execution, under such last-mentioned judgment, under which he became the purchaser but had not taken title. Jones without previously conferring with Mrs. Davie, but, as appears in evidence, with the consent of her attorney, transferred the bid to Mrs. Davie, to whom title was made by the sheriff, and through her attorney had the amount bid for the land credited on the execution issued against him on Mrs. Davie's judgment. Jones then applied to Mrs. Davie to execute a deed of the land to plaintiff as trustee, for the benefit of Jones and his family.

Mrs. Davie alleges that she was induced to execute such a deed, but with the understanding that it should be retained by the trustee, and not recorded until that portion of the agreement that related to the payment of the $1000 had been complied with. The effect of this agreement will be hereafter considered, but it will be assumed for the present purpose that its object was to render the deed inoperative until the sum of $1000 was paid, or secured to be paid, according to the terms of the compromise.

Defendant Jones contends that the terms of the original agreement were, by mutual understanding, changed to such extent that the land in the hands of the trustee was to be actually discharged from the lien of the judgment of Mrs. Davie upon her receiving the cash payment of $500, she to look to her judgment alone for the balance of her demand. This statement of a new contract appears to be incomplete, as it leaves it quite in doubt what was to become of the balance of the judgment, over and above the $1000 secured by it and the credits upon it. This being the nature of the controversy, the exact question is, whether certain acts are required to be performed by the plaintiff, or by the defendant, Jones, before the deed is operative, so as to accomplish the objects intended by the trust expressed in it. In such a case it cannot be doubted that a trustee may come into a court of equity to have his rights and duties defined, and for a determination whether some act on the part of a defendant is not essential to give stability to the trust, and this does not militate

E

against the rule that a trustee must not industriously search for secret defects in his title, as his duty is to protect rather than to destroy it.

It is clear that the nature of the controversy demands the interposition of a court of equity in behalf of the trustee to relieve him from the embarrassments of his position, and we find no reason for the severe strictures on his conduct pronounced by the Circuit decree.

There is no controversy as it regards the terms and objects of the original agreement; the controversy relates wholly to the question whether any rescission or modification of that agreement has been made by the acts of the parties. There are two modes under the facts of the case by which such a rescission or modification might have arisen—first, by the mutual agreement of the parties upon consideration; or, second, by waiver on the part of Mrs. Davie of the conditions in her favor, by the acceptance of less than the contract called for, as the consideration of doing that which she was called on to perform as her part of the agreement. Has either of these cases arisen?

It should be remarked that the contract and dealings between the parties rest wholly on a valuable consideration. The creation of a trust does not appear to have been contemplated by the original contract, unless a secret trust was intended by defendant, Jones, in the event that he should require the judgment to be assigned to a third party, intending thereby protection to himself as against his creditors.

As such a trust is not a necessary inference from the terms of the original contract as stated, and has not gone and need not go into effect, it is unnecessary to consider its possible effect as an element of the contract. As far as the original contract was concerned, it was indifferent to Mrs. Davie whether the benefits of the compromise were secured to Jones indefinitely, or to him and his family. The terms of the trust deed proceed wholly from Jones, who prepared it. When one agrees to convey to another, and the latter prepares a deed of trust for signature, professing to be upon the consideration of natural love and affection, equity will look beyond the terms of the deed to the true consideration,

and finding that it was valuable wholly, will so declare it and act upon it.

The main question in the case as above stated is one of fact, and in order to disturb the findings of the Circuit Court, it is necessary that a conclusion opposite to that of the Circuit Court should rest on clear and indisputable grounds.

We are satisfied that the conclusion of the Circuit Court holding that there was a complete and full delivery was erroneous, as unsupported by the proper legal effect of the proofs and allegations. This question is fundamental to the question already stated as presented by the case, viz., whether any rescission or modification of the original agreement has been effected by the agreement or waiver of the parties, and it will be first considered. The testimony of Mrs. Davie and that of Fraser are in substantial concurrence. The proper deduction from their testimony is, that according to the understanding of both, the deed was to remain in the hands of Fraser, inoperative, until provision was made as it regards the payment of the $1000. This fact becomes extremely important as these parties were the proper parties to the delivery, if one was made, Mrs. Davie as the grantor, and Fraser as the grantee in trust.

Unless, then, this testimony is successfully shaken, it would be extremely difficult to get rid of the consequences of such a mutual understanding between the immediate grantor and grantee, as it regards the nature and intention of the delivery.

It has been objected to Mrs. Davie's statement that she has stated in her answer that it was only the withholding of the deed from record that was contemplated by the condition annexed to the manual delivery of the deed as admitting the deed to be recorded is not essential to its effect as a valid deed between the parties. But it is clear that Mrs. Davie assumed that by withholding the deed from record, it would remain inoperative; and as delivery is an act of the mind, as well as a manual act, presupposing consent that the deed should become operative, evidence showing the absence of that consent must have weight against the inferences arising from mere manual delivery. Mrs. Davie was an aged lady, of seventy-four, dealing with a nephew, and, it is evident from her testimony, had an imperfect knowledge of

the state of the transaction at the time she executed the deed in question.

She was examined upon written interrogations and appears to have answered directly, but briefly. Although she does not state, in terms, that it was stipulated that the deed should not become operative until the conditions as to the $1000 were complied with, that question not having been put to. her, yet she stated the incomplete state of the transaction at the time the deed is alleged to have been delivered, in a manner that fully accords with and corroborates the more full statement of the matter made by the trustee, Fraser. Fraser states that the deed was not recorded because, as he understood, "it was not to be recorded until all the conditions of the compromise had been complied with."

This testimony has been criticised for the reason that it is the statement of the witness' understanding alone. It is true that when it is sought to prove the existence of a fact by the statement of a witness that he understood the fact so to be, the proof is of the weakest character, for in that form of statement the sense of " understood " is equivalent to that of " believed," and that belief might be founded on hearsay or conjecture. But here the existence of such an understanding is the very fact to be proved, that word being used in the sense of " agreement," and therefore the mere statement of its existence by a party to it, is direct proof in itself.

The subsequent conduct of the parties shows that they mutually understood that withholding the deed from record was equivalent to withholding it from operating as a deed. It was handed by Fraser to Mr. Hamilton, and retained in his possession unrecorded until the commencement of this action. It does not appear that any act asserting title under the deed has been performed by the trustee.

The Circuit decree arrives at the conclusion that Mr. Hamilton is not to be regarded as the attorney of Mrs. Davie, but on this point the testimony is so clear and conclusive that it does not need comment or illustration. We hold the proof sufficient to show that Mr. Hamilton in taking possession of the deed and holding the same, did so as the attorney of Mrs. Davie.

Then taking together the testimony of the grantor and the trustee, and that of Mr. Hamilton, it becomes apparent that the deed was delivered by the grantor to the grantee with the mutual understanding that it should not operate until the terms of the original agreement, as it regarded the payment or security of the $1000, had been complied with.

Opposed to this are the statements contained in the answer of the defendant, Jones, which, by the stipulation of the counsel for the parties, are to be treated as if sworn to by Jones as testimony in the case. The statements of the answer, as it regards the intended effect of the deed, are in general terms, and do not show any facts or circumstances tending to give probability to his statements, as against those of the trustee. Primarily it must be assumed that the immediate grantor and grantee had the best knowledge of what was intended between them, but this inference might give place to a different result, if it was made to appear that the transaction was actually with Jones, and only nominally with Fraser. But the statements of Jones lay no sufficient foundation for such a conclusion. So, too, if any purpose of equity was to be subserved thereby, Jones might be treated as the actual party; but on the contrary, the equities are with Mrs. Davie to have the purposes of her contract carried into effect. We must therefore give effect to the mutual understanding of the parties between whom the transaction was in form of law perfected.

It is clear that the course pursued by the defendant, Jones, was at variance with the original contract, and tended to place Mrs. Davie in a position in which Jones would obtain the substantial benefits intended by the transaction, without affording to her the advantages contemplated in her favor. It is not to be presumed that Mrs. Davie intended to relinquish those benefits, nor was Fraser, though interested as trustee, bound to assist Jones in stripping Mrs. Davie of these advantages. No principle of equity requires that a trustee should yield himself as a party to an overreaching transaction against his grantor. He is as much bound to good faith as one who deals in his own interest. The testimony of Fraser must, therefore, be considered as proceeding from one devoid of personal interest and acting wholly

for the benefit of others. As the testimony of Fraser cannot be shaken on the ground of credibility for anything that appears, it is clearly a case for leaving the matters where they stood, according to the mutual understanding of the parties to the act of delivery. An attempt was made by counsel to impeach the accuracy of the memory of Fraser by the admitted fact that at one time he had forgotten the existence of the deed, a circumstance not likely to have happened, had it been regarded by him as complete and operative; but, however that may be, the fact of having forgotten a transaction at some time after its occurrence and prior to giving testimony about it, is not conclusive that the memory of the witness is defective as to its details.

A subject may pass entirely out of the mind, and yet, upon being recalled, the memory of the various matters connected with it may be entirely reliable.

The principles on which the foregoing conclusion, as to the bearing on the effect of manual delivery of the intentions of the parties, were recently considered by this court in *Arthur* v. *Anderson*, 9 *S. C.*, and the cases bearing on that subject there noticed. It is not necessary to re-examine the foundations on which they rest. There is no question of an escrow in the case, the true question being the effect in equity of the understanding of the parties under which manual delivery was effected. It is, therefore, unnecessary to consider the propositions advanced relating to the validity of escrows.

There being, then, no absolute delivery of the deed, its recitals cannot be employed against the grantor, as has been attempted; not having direct effect in that respect, it cannot act indirectly upon the parties.

The only proof offered of any change in the terms of the original contract comes from the answer of the defendant, Jones, considered as testimony in the case. The *onus probandi* is on Jones, who alleges such change. His testimony is rebutted by that of both Mrs. Davie and Fraser, and fails to repel the presumption of the continuance of the contract in the form originally made.

The want of operation in the deed precludes the charge that Mrs. Davie had waived full performance of the terms of the original contract, for no other act of hers is alleged as having produced

that effect. It follows, therefore, that the decree of the Circuit Court was erroneous, and it must be set aside.

The cause must be remanded to the Circuit Court for an inquiry whether the situation of the property and of the parties is such that the deed of trust can take effect in substantial compliance with the terms of the contract between the parties as hereby established, and for a final decree upon the principles hereinbefore stated.

Decree reversed.

McIVER and HASKELL, A. J.'s, concurred.